

```
                                            FILED

                                         OCT 3 0 2009

                              UNITED STATES BANKRUPTCY COURT
                               EASTERN DISTRICT OF CALIFORNIA
```

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

In re:                              )       Case No. 09-32327-D-13L
                                    )
PAULA CORDOVA,                      )       Docket Control Nos.  SL-1
                                    )                            SL-2
            Debtor.                 )                            SL-3
                                    )
                                    )       Date:  October 13, 2009
                                    )       Time:  1:00 p.m.
_____)       Dept:  D

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

On August 5, 2009, the United States Department of Agriculture, Rural Development Agency ("Rural Housing") filed an Objection of the United States to Treating Its Purchase Money Mortgage on the Debtor's Residence as Four Separate Mortgages (the "Objection"), bearing Docket Control Nos. SL-01, SL-02, and SL-03.  For the reasons set forth below, the court will overrule the Objection.

### I. INTRODUCTION

The debtor filed her chapter 13[1] petition commencing this case on June 16, 2009.  At the same time, the debtor filed a proposed chapter 13 plan containing three Attachments M-3 -- Motions to Value Collateral (the "Motions"), by which the debtor

_____

1.   Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

1  seeks to value at zero three alleged secured claims of Rural
2  Housing evidenced by deeds of trust against the debtor's property
3  at 210 Palin Avenue, Galt, California (the "Property"), those
4  claims to be treated instead as general unsecured claims.[2]

5       Rural Housing objects to the Motions, arguing that the loan
6  documents the debtor signed in connection with her purchase of
7  the Property were all part of a single transaction; in essence,
8  that Rural Housing has a single purchase money mortgage against
9  the Property that the debtor cannot bifurcate into secured and
10  unsecured portions.

11                          **II. ANALYSIS**

12       This court has jurisdiction over the Objection pursuant to
13  28 U.S.C. §§ 1334 and 157(b)(1).  The Objection is a core
14  proceeding under 28 U.S.C. § 157(b)(2)(B).

15       Pursuant to § 506(a)(1), "a claim is secured only to the
16  extent of the value of the property on which the lien is fixed;
17  the remainder of that claim is considered unsecured."  United
18  States v. Ron Pair Enterprises, 489 U.S. 235, 239 (1989).  In a
19  chapter 13 case, if a claim is secured only by the debtor's
20  primary residence and the value of the property is sufficient to
21  secure the claim at least in part, § 506(a)(1) may not be used to
22  bifurcate the claim.  § 1322(b)(2); Nobelman v. American Savings
23  Bank, 508 U.S. 324, 327-32 (1993).  However, if the value of the
24  property is such that it provides no security at all for the
25  claim, that is, if the claim is totally unsecured, § 506(a)(1)

26
27       2.   The debtor identified the three Attachments M-3 as
     Docket Control Nos. SL-001, SL-002, and SL-003; hence Rural
     Housing's use of the those docket control numbers on the
28   Objection.

                              - 2 -

may be used to bifurcate the claim and "strip off" the lien. Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1226-27 (9th Cir. 2002); Lam v. Investors Thrift (In re Lam), 221 B.R. 36, 41 (9th Cir. BAP 1997).

The debtor contends that the value of the Property is $109,000 and that Rural Housing has four liens against the Property -- in the amounts of $141,357.22, $84,172, $3,000, and $2,600 in order of priority.[3]  Because the amount secured by the most senior lien, $141,357.22, exceeds the value of the Property, the debtor contends there is no value in the Property to secure the two remaining liens, which should therefore be valued at zero.

The loan amounts and corresponding liens derive as follows. When the debtor purchased the Property, in May 2003, Rural Housing allowed her to assume the seller's Rural Housing loan, then having a balance of $112,603.27, Objection, Ex. 4, secured by a deed of trust recorded November 6, 1998.  Id., Ex. 1.  Rural Housing loaned the debtor the remaining amount of the purchase price, $82,390.  Id., Ex. 4.  A deed of trust securing an indebtedness of $82,390 was recorded on May 13, 2003, id., presumably the day escrow closed on the debtor's purchase of the house.  Rural Housing allowed the debtor to make certain repairs to the Property after the close of escrow, and for that purpose, loaned her an additional $3,000 on October 9, 2003 and $2,600 on November 9, 2003.  Objection, Ex. 6.  A deed of trust securing

---

3.  As will be seen below, there are actually three liens securing four loans -- two of the loans, the $3,000 and $2,600 loans, are secured by a single deed of trust.

- 3 -

1 | these two loans was recorded on March 16, 2004.  Id.[4]

2 |     Rural Housing does not for the purpose of the Objection
3 | dispute the debtor's valuation of the Property.  Instead, it
4 | contends its loans to the debtor, including her assumption of the
5 | senior loan, the new $82,390 loan, and the two loans for repairs,
6 | comprised a single transaction whereby the debtor purchased the
7 | Property.

8 |         [The debtor] cannot treat each promissory note or
        assumption agreement as being a separate loan and
9 |         allege that the three "junior" liens have no equity
        because the assumption agreement and the three
10 |         promissory notes that [the debtor] executed and
        delivered to Rural Housing in 2003 are all part of the
11 |         purchase price she agreed to pay for [the Property],
        which purchase price Rural Housing lent her.
12 |

13 | Objection, 2:27-3:3.[5]

14 |     Rural Housing cites Nobelman as support for its theory that
15 | because value of at least $109,000 secures "the Rural Hous[ing]
16 | mortgage," the debtor cannot bifurcate "it" into secured and
17 | unsecured portions.  Objection, 3:3-6.  The suggestion is that
18 | all the loans comprise a single mortgage.[6]

19 |

20 |     4.  In addition to the assumption agreement, the debtor
  signed individual promissory notes in favor of Rural Housing, for
21 | $82,390, $3,000, and $2,600 respectively.  Objection, Exs. 4, 6.

22 |     5.  The theory that the loans for repairs, although made
  months later, were a part of the purchase is based on the
23 | suggestion that the repairs were necessary to bring the house up
  to Rural Housing's standards, and that absent the debtor's
24 | agreement to make those repairs, Rural Housing would not have
  assisted with her purchase of the Property.  See Declaration of
25 | Ralph Westlin, filed August 5, 2009, §§ 5, 19, referring to "any
  and all repairs and USDA upgrade requirements," and "repairs to
26 | bring the Palin house up to USDA standards."

27 |     6.  In a slightly modified version of the Objection, filed
  August 7, 2009, Rural Housing refers to "the Debtor's improper
28 |                                     (continued...)

1    Rural Housing cites no authority, and the court is aware of
2  none, for the proposition that different obligations secured by
3  different deeds of trust together comprise a single "mortgage" or
4  any other type of single charge or encumbrance against real
5  property.

6    It is clear from Rural Housing's own documents that the
7  debtor's obligations secured by each of the three deeds of trust
8  are separate and distinct from each other.  None of the documents
9  purports to cross-collateralize any of the obligations, although
10  Rural Housing could easily have chosen to structure the
11  transaction in that fashion.

12    Although Rural Housing suggests it afforded the debtor some
13  advantage when it "allowed" her to assume the senior loan,
14  Objection at 2:6-8, the obligations evidenced by the assumption
15  agreement and the $82,390 promissory note carry the same interest
16  rate and precisely the same maturity date, May 9, 2041.[7]  Rural
17  Housing suggests no reason it could not have used a single note
18  and deed of trust for the entire amount of the purchase price.
19  However, even if Rural Housing could demonstrate an advantage to
20  the debtor from the structuring of the transaction, there is no
21  authority to suggest that advantage to the borrower is the test
22  in determining the effect of layered financing under § 506(a).

23

24  6.(...continued)
   attempt to strip its first position purchase money mortgage from
25  the Debtor's residence."  Objection of the United States to
   Treating Its Purchase Money Mortgage as Four Separate Mortgages
26  filed August 7, 2009, 1:20-22.  The court notes also that Rural
   Housing has filed a single proof of claim, for $256,775.05.

27    7. Further, the monthly payments specified in the assumption
   agreement and the promissory note are both in the precise amounts
28  necessary to fully amortize the loans over their 38-year term.

- 5 -

1    Finally, the two loans for repairs were made five and six
2  months after the debtor's purchase of the property; the deed of
3  trust securing them was not recorded until ten months after the
4  purchase transaction closed.   These loans have a different
5  interest rate and maturity date from the assumed loan and the
6  $82,390 loan.   There is no legal or logical reason to treat them
7  as a part of the purchase transaction secured by a single
8  security instrument.

9    Most significant, Rural Housing could not declare a default
10  under one of the promissory notes but then foreclose under the
11  deed of trust securing a different note; by the same token, the
12  debtor could pay off one of the obligations and require
13  reconveyance of the deed of trust securing that particular
14  obligation.   The fact that the assumed loan and the $82,390 loan
15  together comprised the purchase price of the Property does not
16  tie them together for purposes of § 506(a) any more than if the
17  debtor had assumed the first with Rural Housing but borrowed the
18  remainder of the purchase price from a third party or parties
19  through second and/or third deeds of trust.

20                          **III. Conclusion**

21    The court concludes that the three sets of obligations --
22  (1) those evidenced by the assumption agreement and secured by
23  the senior deed of trust, (2) those evidenced by the $82,390
24  promissory note and secured by the second deed of trust, and (3)
25  those evidenced by the $3,000 and $2,600 promissory notes and
26  secured by the third deed of trust -- are independent obligations
27  secured by stand-alone deeds of trust.   Because the amount due
28  under the assumption agreement exceeds the value of the property,

                              - 6 -

1  Rural Housing's claims under the $82,390, $3,000, and $2,600

2  promissory notes are entirely unsecured under § 506(a).

3        For the reasons set forth above, the Objection will be

4  overruled.   The court will issue an appropriate order.

5

6  Dated: October 2?, 2009        _Robert Bardwil_____
                                   ROBERT S. BARDWIL
7                                  United States Bankruptcy Judge

## CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document on today's date to each of the parties listed below:

Office of the US Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1852

Paula Cordova
P.O. Box 54
Galt, CA 95632

Steele Lanphier
2817 I Street, #3
Sacramento, CA 95816

Ana Maria Martel
U.S. Attorney's Office
501 "I" Street, Suite 10-100
Sacramento, CA 95814

DATE:    OCT 3 0 2009

Deputy Clerk